Anthony D. Prince (SBN # 202892)
General Counsel, California Homeless Union/Statewide Organizing Council
Law Offices of Anthony D. Prince
2425 Prince Street, Ste. 100
Berkeley, CA 94705
Tel: 510-301-1472
E-mail: princelawoffices@yahoo.com
Attorneys for Plaintiffs

Pag
- 1 -

# UNITED STATES COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SACRAMENTO HOMELESS UNION; COMMITTEEE TO RECALL DARRELLL STEINBERG; and THIRTY (30) INDIVIDUAL PROPONENTS AND SIGNATORIES TO THE NOTICE OF INTENT TO RECALL MAYOR STEINBERG NAMED HEREIN,<br><br>Plaintiffs<br><br>vs.<br><br>CITY OF SACRAMENTO; SACRAMENTO CITY CLERK MINDY CUPPY; ASSISTANT CLERK WENDY KLOCK-JOHNSON; SACRAMENTO CITY ATTORNEY SUSANA ALCALA WOOD, all sued in their official and individual capacities, DOES 1 - 100,<br><br>Defendants | Case No.:<br><br>***EX PARTE* APPLICATION FOR EXPEDITED HEARING AND REQUEST FOR WRIT OF MANDATE ORDERING THE SACRAMENTO CITY CLERK AND THE SACRAMENTO CITY ATTORNEY TO ACCEPT AND FILE PLAINTIFFS' NOTICES OF INTENTION TO RECALL MAYOR DARRELL STEINBERG; FOR A DECLARATORY JUDGMENT THAT DARRELL STEINBERG IS PRESENTLY SUBJECT TO RECALL; VIOLATIONS OF THE FIRST AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND ARTICLE 1 OF THE CALFORNIA CONSTITUTION AND 42 U.S.C. §1983; DECLARATION OF ANTHONY D. PRINCE; [Proposed]ORDER.** |

## INTRODUCTION

1.     The right to vote is one of the most important fundamental rights guaranteed to the citizens of the United States and the State of California which includes the right to recall elected officials via procedures set forth by cities, counties and states. When the requirements, themselves, or the failure by city, county or state officials to abide by constitutionally-sound rules and thereby violate the right of qualified voters to recall elected officials, a federal question is presented.

2.     The case at bar presents the issue of a City Clerk, who serves as the local election official

Plaintiffs' *Ex Parte* Application for Writ of Mandate and Declaratory Judgment

1   for the City of Sacramento who first agreed to accept but then, hours away from the agreed-upon

2   time and date for in-person filing, suddenly canceled the appointment and announced—assertedly at

3   the direction of Defendant City Attorney – that she would not accept Plaintiffs' facially-compliant

4   Notices of Intention to Initiate a Recall against Sacramento Mayor Darrell Steinberg. In so acting,

5   The City Clerk exceeded her authority as a ministerial official, as defined by the City's own job

6   description and case law, to simply examine the Notices for defects in and facial compliance with

7   City and State law regarding the service and filing of such Notices.

8   3.      Instead, Defendant Clerk, assertedly at the direction of the City Attorney -- who, as

9   discussed more fully below, also exceeded her authority—made a summary legal interpretation and

10   determination that the signed Notices of Intention failed to conform to the Sacramento City Charter

11   Chapter 163 with regard to what is meant by the amount of time the target of the recall has "served

12   in office" to determine whether and when the official is subject to recall.

13

14   4.      Accordingly, because Plaintiffs and the general voting community of the City of Sacramento

15   have been and continue to be delayed and seriously compromised in mounting the recall effort,

16   Plaintiffs seek the immediate issuance of a Writ of Mandamus, instructing Defendants to accept

17   and, barring deficiencies that appear on the face of the Notices of Intention, to accept, file and

18   permit Plaintiffs to take the next steps in the Recall process. Plaintiffs seek also a declaratory

19   judgment that Sacramento Mayor Darrell Steinberg was at the time of Plaintiffs' first attempt to file

20   said Notices and is now subject to recall and to adjust time frames and deadlines within which

21   Plaintiffs would otherwise have been able to go forward but for the actions of the City Clerk and

22

23   City Attorney. [1]

24   _____

25   [1] Defendants may object that 30 days have elapsed since their Notices to Initiate the Recall were first rejected; that therefore, Plaintiffs have "unduly" delayed filing this action. However, at the time that Plaintiffs' signed Notices of
26   Intent to Recall were rejected by Defendants on February 24, 2021, the U.S. Senate had not yet confirmed former California Attorney General Xavier Becerra as President Biden's cabinet pick for U.S. Secretary of Health and Human
27   Services and there was broad speculation that Mayor Darrell Steinberg was on Governor Gavin Newsom's "short list" to replace him. Nevertheless, Plaintiffs continued work on their *Ex Parte* application. With the delays caused by
28   Defendants' refusal to accept Plaintiffs' Notices, and the time then necessarily spent to prepare this Application, Plaintiffs became concerned—especially after Mr. Becerra was confirmed on March 18, 2021 -- that Steinberg could be

Plaintiffs' *Ex Parte* Application for Writ of Mandate and Declaratory Judgment

## JURISDICTION AND VENUE

5.      Jurisdiction and venue are proper as all parties reside in Sacramento, in the Northern District of California where events complained of herein injunctive are taking place. Jurisdiction exists based on 28 U.S.C. Section 1331 and 1343 in that this case is brought pursuant to 42 U.S.C. Section 1983 and raises questions of federal constitutional law under the Eighth and Fourteenth Amendments. Jurisdiction also exists under the Declaratory Judgment Act, 28 U.S.C. Sections 2201(a) and 2202.

## PARTIES

6.      Plaintiff **SACRAMENTO HOMELESS UNION** ("Homeless Union" or "the Union") is an unincorporated association of homeless and housing-insecure families, individuals and advocates, and a member local of the California Homeless Union/Statewide Organizing. The Union's mission is to organize, represent and serve the Santa Cruz homeless community. The majority of its officers and members live in homeless encampments. The Union brings this suit on behalf of itself and on behalf of its members and other homeless residents of Sacramento who suffered destruction and bodily harm as a result of Defendants' failure to provide indoor shelter during the storm of January 24-25 and as the initiator and principal organizer of the Committee to Recall Darrell Steinberg.

7.      Plaintiff **COMMITTEE TO RECALL DARRELL STEINBERG** is comprised of registered voters in the City of Sacramento, including thirty individuals who signed the required Notices of Intent to Recall and have been obstructed in their right to recall Mayor Darrell Steinberg.

8.      Defendant **MINDY CUPPY** is the City Clerk for the City of Sacramento and is sued both in both her individual and official capacities.

---

leaving the Mayor's office very shortly and the recall effort would be moot, although for future recalls, this case could be justiciable under the doctrine of "capable of repetition, evading review." Today, March 24, 2021, it was confirmed by the Sacramento Bee Newspaper and other reliable media sources that Mayor Steinberg will not be named State Attorney General. (Exh. I to Prince Decl.) Thus, given that he will now continue in office, with the attendant concerns of the homeless and other community members regarding threats to the health, safety and lives of the unhoused going unaddressed, Plaintiffs stress the urgency of immediately removing all unjustified obstacles to the recall process. Plaintiffs' *Ex Parte* Application for Writ of Mandate and Declaratory Judgment

9.      Defendant **WENDY KLOCK-JOHNSON** is the Assistant and is sued in both her

individual and official capacities.

10.     Defendant **SUSANA ALCALA WOOD** is the Sacramento City Attorney, sued in both her

individual and official capacities.

11.     Defendant **CITY OF SACRAMENTO** is a municipal corporation existing under the laws

the State of California, with the capacity to sue and be sued.

## STATEMENT OF FACTS

12.     Darrell Steinberg was originally sworn in as Mayor of Sacramento on January 13, 2016,

won re-election and was sworn in for a second term on December 15, 2020; thus he has

physically held that office uninterruptedly for over five years.  In January of this year, Mayor

Steinberg caused a massive public outcry and publicly admitted responsibility for the deaths of at

least four homeless persons when he failed to open a shelter during a brutal storm with 70-mile per

hour winds, driving rain and near-freezing temperatures. (Exhibit A to Declaration of Anthony D.

Prince). For this reason, and for generally failing to protect marginalized communities, as set forth

in the "GROUNDS" section of the Recall Notice, the Sacramento Homeless Union led the

establishment of a Committee to Recall Darrell Steinberg. (Exhibit B to Declaration of Anthony D.

Prince)

13.     On February 19, 2021, counsel for Recall Proponents/Plaintiffs Anthony Prince attempted to

file the statutorily required Notices of Intention to Recall Mayor Steinberg, consisting of three

Notices, bearing a total of thirty signatures, ten more than the number required and otherwise in

complete facial conformity with rules set forth by the State of California Guide to Recall, as

required by the City of Sacramento.  (See Exhibit C to Declaration of Anthony Prince.) As required

by the Guide, Plaintiffs served copies of the signed Notice of Intention on Mr. Steinberg and the

Plaintiffs' *Ex Parte* Application for Writ of Mandate and Declaratory Judgment

City Attorney via dropbox at City Hall to be delivered to Mayor and City Attorney, both working from home. (Exhibit D to Prince Decl.) Attorney Prince was hesitant to use the dropbox to file the original signature Notices with the City Clerk, since he wished to have a personally date and time-stamped verification/receipt. Accordingly, on February 24, 2021, he made an appointment and received a confirmation from the City Clerk the same day to meet in person on the morning of February 25, 2021 in the City Hall to file the Notices and receive a file-stamped receipt. (Exhibit E to Prince Declaration.)

14.      However, at approximately 7:30 pm on that same day, Plaintiffs' counsel received an email from the City Clerk notifying him that the meeting would not take place and the Clerk would not file the notices with the justification that Mayor Steinberg was not subject to recall under the terms of Sacramento City Charter Section 163. (Exhibit F to Prince Declaration.) Attorney Prince responded to the cancelation via email. (Exhibit G to Prince Decl.)

15.      On Feb. 25, 2021, City Attorney Susana Alcala Wood wrote to Attorney Prince in response to his prior email protesting the refusal of the Clerk to accept the Notices. In her letter, Defendant Wood suggested that Mr. Prince had "misunderstood" the clerk's email of the night before and stated that he was free to dropbox the original signature Notices at City Hall. (Exhibit H to Prince Decl.) However, in the very same letter Ms. Alcala-Wood stated that even if filed, it would be rejected.

## MEMORANDUM OF POINTS AND AUTHORITIES

I.      **The Sacramento City Clerk and City Attorney Violated the Petitioners' Constitutional Rights to Free Speech and Expression, Due Process and Equal Protection Under the First and Fourteenth Amendments Which, As Federal Courts Have Recognized, Includes the Right to Vote and to Recall Local Officials**

16.      In *Buckley v. American Constitutional Law Foundation*, the US Supreme Court struck down Colorado election laws that were overly restrictive of initiative petitions because they interfered with petition proponents' constitutional rights "without sufficient cause." (1999) 525 U.S. 182, 205.

Plaintiffs' *Ex Parte* Application for Writ of Mandate and Declaratory Judgment

These state laws included requirements that petition circulators to wear name badges, be registered voters themselves, and provide disclosure reports for their compensation. The *American Constitutional Law Foundation* ruling affirmed that, "The **First Amendment requires us to be vigilant** in making those judgments, to guard against undue hindrances to political conversations and the exchange of ideas… the **restrictions in question significantly inhibit communication with voters about proposed political change and are not warranted by the state interests** (administrative efficiency, fraud detection, informing voters) alleged to justify those restrictions." *Id.* (Emphasis added).

17.     The US Supreme Court also recognized that, "[c]irculating a petition is akin to distributing a handbill", referring to their prior ruling in *McIntyre* v. *Ohio Elections Commission*, in which the petitioner challenged an Ohio law that prohibited the distribution of anonymous political campaign literature. (1995) 514 U. S. 334. There, the Court held the campaign literature was a pamphlet urging voters to defeat a ballot issue and applied "exacting scrutiny" to hold that the ban on anonymous speech violated the First Amendment. *Id.* at 347, 357

18.     Here, similarly, the interference with voters' right to recall justifies the higher level of "exacting scrutiny" because the City Clerk and City Attorney are interfering with Petitioner's First Amendment right to free speech and expression by fully preventing this recall campaign from beginning. This local rule they are incorrectly applying to bar the recall campaign is not part of the "the mechanics of the electoral process[.] Here, Defendants disregard the plain language of their own Local rule where the term "current term" does not appear and seeks refuge in the State Election Code where that term appears expressly. See also, *Anderson v. Celebrezze*, 460 U.S. 780 (1983), at 786. (Supreme Court struck down Ohio's early filing deadline for independent candidates as an unconstitutional burden on the rights to vote and associate "because an election campaign is an effective platform for the **expression of views on the issues of the day, and a candidate serves as a rallying point for likeminded citizens."** Id. At 788. (Emphasis added.)

Plaintiffs' *Ex Parte* Application for Writ of Mandate and Declaratory Judgment

19.    Here, the self-confessed failure of Darrell Steinberg to open shelters during a deadly storm of which he had forewarning serves as the "rallying point" for those seeking to hold him fully accountable and subject to removal from office *now* and not months from now when memories and public outrage may have dimmed.

Page - 7 -

20.    Here, the "current term" requirement that City Clerk and City Attorney are attempting to add to the Sacramento City Charter, to support their position that the recall is premature, has a substantial impact on the right of voters in Sacramento to exercise their constitutional rights to vote and to recall and elect a new mayor by way of association with this recall petition. Furthermore, the City can provide no justification for their inference of this requirement, since there is no current term requirement in the Sacramento City Charter, the only temporal limitation being "held office for six months." This is not a necessary burden, it is a manufactured one, to avoid or delay the impending recall.

B.    **The City Attorney's Conflicting Justifications for and "Reversals" of the Clerk's Refusal to Accept Plaintiffs' Notices Underscore the Pretextual Nature of Her Actions and Betrays a Prohibited Political Motivation**

21.    As detailed in the Declaration of Anthony D. Prince, Defendants initially agreed to and then only hours before the agreed upon day and time, backed out of their agreement to meet Mr. Prince in the City Hall lobby on February 24, 2021, allow him to have the signed Notices of Intent to Recall filed and to have the clerk provide him with a file-stamped receipt as outlined above.  In this way, on a purely political matter of the recall of the mayor something that cannot be legitimately considered "city business," the City Attorney's letter of February 25, 2021, is nothing but a device to explain away her previous instructions to the Clerk to refuse acceptance of Plaintiffs' Notices by placing the blame on Plaintiffs' counsel's alleged "incorrect reading" of the Clerk's email.

22.    Article XI § 163 of the Sacramento City Charter authorizes the recall of a local elected official: "The holder of any elective office may be recalled, in the manner provided by state law

Plaintiffs' *Ex Parte* Application for Writ of Mandate and Declaratory Judgment

1   applicable to cities, by the electors after such person has **held office six months**."

2   http://www.qcode.us/codes/sacramento/ (Emphasis added)

3   23.      Defendants claim that § 163 justifies their position that Plaintiffs' Recall attempt is

4   premature because Darrell Steinberg has served less than six months in his *current term,* despite the

5   absence of any such limiting language in Section 163 and in disregard of the fact that Mayor

6   Steinberg has uninterruptedly served as Mayor for over five years.

7
8   24.      City Charter Section 163 entirely omits the "current term" language that is found in the

9   similar section of the California Elections Code at § 11007, and Sacramento's adoption of their

10  current rule in 1977 followed the CA Legislature's inclusion of the "current term" language in the

11  state law in 1976. Therefore, the "current term" requirement was deliberately omitted from the local

12  rule, and thus cannot be inferred in it. Furthermore, §163 points back to the CA Elections Code as

13  guidance for the local recall procedure, when it clearly states that the recall shall be made "in the

14  manner provided by state law applicable to cities."

15
16  25.      The authors of the Sacramento City Charter § 163, as adopted by the City of Sacramento in

17  1977, clearly intended to follow the guidelines of the state in all other respects. Consequently, the

18  authors of the City Charter would have been aware of the comparable section of the CA Elections

19  Code, yet **they deliberately chose to not include the "current term" requirement** that was

20  already in the state rule. Thus, the Sacramento City Clerk and City Attorney have made an illegal

21  and incorrect interpretation of the law. Furthermore, these local officials are charged with no

22  discretionary authority to make such judicial interpretations.

23
24  26.      Article XI, § 160 of the Sacramento City Charter states that "**The powers of** the initiative,

25  referendum and the **recall** of elected municipal officers **are hereby reserved to the electors of the**

26  **city**. The provisions of the Elections Code of the State of California, as the same now exist or may

27  hereafter be amended, governing the initiative and referendum and the recall of municipal officers

28  in cities shall be applicable insofar as the same are not in conflict with this Charter."

27.    Article XI § 163 authorizes recall: "The holder of any elective office may be recalled, in the manner provided by state law applicable to cities, by the electors after such person has **held office six months**." http://www.qcode.us/codes/sacramento/ (Emphasis added)

28.    Article VI § 71 details the extremely limited authority of the City Clerk, stating: "The city council shall appoint a city clerk who shall have custody of and shall be responsible for the official seal and records of the city. The city clerk shall act as secretary of the city council and all other boards, commissions, and agencies of the city. The city council shall prescribe the qualifications additional duties and compensation of the city clerk."

29.    Thus, the Sacramento City Clerk and City Attorney have made an illegal and incorrect interpretation of the law. In the case of Defendant City Clerk Cuppy and Assistant Clerk Klock-Johnson, they are both ministerial officials with no discretionary authority to make such judicial interpretations. In the case of Defendant City Attorney Wood, Plaintiffs assert that her direction to the Clerks to refuse their signed Notices of Intent to Recall was outside the scope of the authority since a recall is a political process and, as discussed more fully below, cannot be regarded as "city business."

**The Sacramento City Clerk and City Attorney Have Exceeded Their Authority and Violated Multiple State Laws.**

30.    According to the California Constitution, the California Legislature must provide for the recall of local officers. This provision, however, does not affect counties and cities whose charters provide for recall. (Cal. Const., Art. II, Sec. 19). In this case, Plaintiffs do not dispute that City of Sacramento Charter Section 163 takes precedence over the Election Code of the State of California. The California Elections Code specifies that for the purpose of recall of local officers, the term "clerk" refers to the appropriate elections official for this jurisdiction, in this case: "The **city clerk** in the case of the recall of elective officers of a city." (Elections Code §§ 307) (emphasis added).

Plaintiffs' *Ex Parte* Application for Writ of Mandate and Declaratory Judgment

31.     Proponents begin the recall of an elective officer, by the service, filing and publication or posting of a notice of intention to circulate a recall petition. (Elections Code § 11006). A copy of the notice of intention must be served by personal delivery or by certified mail on the officer sought to be recalled. In addition, the original of the notice of intention, along with an affidavit of the time and manner of service, **must be filed with the local elections official within seven days of being served**. (Emphasis added)

32.     The State Elections Code requires that "Proceedings may not be commenced against an officer of a city, county, special district, school district, community college district, or county board of education in the event of one or more of any of the following:

      (a)  He or she has not held office **during his current term** for more than 90 days.

      (b)  A recall election has been determined in his or her favor within the last six months.

      (c)  His or her term of office ends within six months or less." Elections Code § 11007"

      (Emphasis added)

33.     According to the legislative history, this "current term" requirement has been part of the California Elections Code since at least 1976. CA Stats. 1976. Ch. 1437. Sacramento City Charter Sec. 163 was adopted in 1977, one year later. Thus, the City was aware of the limiting/conditional language "held office *during his current term*" but chose not to use such language in Section 163. In Sacramento, therefore, by the express terms of its own City Charter, an official is subject to recall if he has held office for at least six months.

34.     Here, Mayor Steinberg has held office, uninterruptedly, for over five years—a period of time well over the six month "safe harbor" in the Sacramento City Charter. Absent any requirement that the calculation of time in office must be "during his current term" he is subject to recall and was subject to recall when Plaintiffs served him pursuant to both Local and State rules via dropbox with a copy of Notice of Intent to recall on February 19, 2021.

Plaintiffs' *Ex Parte* Application for Writ of Mandate and Declaratory Judgment

35.     Cal. Gov't Code §36503 provides that "City officers holding elective city office shall hold

office for their prescribed terms from the date of the installation of officers following adoption by

the council of the official canvass of their election and **until their successors are elected and**

**qualified**." This section makes it clear that the mayor holds his or her office continually until a

successor is elected. Steinberg took office as Mayor of Sacramento in 2016, therefore, he has held

office as mayor continually since that time and cannot therefore be a successor to himself.

**The City Clerk, Admittedly at the Direction of the City Attorney, Exceeded Her Authority by Refusing to File Plaintiffs' Notice of Intention to Recall; The City Attorney Exceeded Her Authority in Advising or Ordering the Clerk To Do So**

36.     The California Elections Code specifies that for the purpose of recall of local officers, the

term "clerk" refers to the appropriate election official for this jurisdiction, in this case: "The **city**

**clerk** in the case of the recall of elective officers of a city." (Elections Code §§ 307) (Emphasis

added). Article VI § 71 of the Sacramento City Charter details the extremely limited authority of the

City Clerk, stating: "The city council shall appoint a city clerk who shall have custody of and shall

be responsible for the official seal and records of the city. The city clerk shall act as secretary of the

city council and all other boards, commissions and agencies of the city. The city council shall

prescribe the qualifications additional duties and compensation of the city clerk." At no point in the

e-mail exchanges on this matter have Defendants ever produced evidence that the Clerk's duties

include the authority to reject a Notice of Intention to Recall for reasons other than facial invalidity,

a purely ministerial function.

37.     Here, no determination of facial invalidity was found or communicated to Plaintiffs; indeed,

the Clerk did not even examine the Notices and justified her refusal to accept the Notices by making

a legal determination of the meaning of a specific term in Charter Section 163. Moreover, as the

Court stated in *State Board of Equalization v. Board of Supervisors*, the court made it clear that,

"An administrative officer may not make a rule or regulation that alters or enlarges the terms of a

legislative enactment." (190) 105 Cal.App.3d 813, 819. In this case the City Attorney essentially

Plaintiffs' *Ex Parte* Application for Writ of Mandate and Declaratory Judgment

Page - 11

1   altered the express terms of Charter Section 163 by insisting that to be recalled, Mayor Steinberg

2   had to have served at least six months *in his current term* while no such limiting language exists in

3   the City's own charter.

4   38.    With regard to the City Attorney, Cal. Gov't Code § 41801, states, "The city attorney shall

5   advise the city officials in all legal matters pertaining to *city business*." (Emphasis added.) This

6   section makes it clear that the city attorney is not the mayor's attorney and, to the extent she or he

7   may provide legal advice, it must be on a matter of city business. Therefore, an attempt by voters to

8   recall Mayor Steinberg is not and cannot be city business as it is entirely a political question of the

9

10   mayor's fate. For such an effort to be regarded as "city business" would be to convert the City into a

11   partisan institution on the side of a targeted official.

12   39.    Moreover, the Brown Act, at Cal. Gov't Code §54952.2 (b) (1), makes clear that no

13   communications could have been lawfully made by the Sacramento City Council regarding this

14   matter, when it states that: "A majority of the members of a legislative body shall not, outside a

15   meeting authorized by this chapter, use a series of communications of any kind, directly or through

16   intermediaries, to discuss, deliberate, or take action on any item of business that is within the

17   subject matter jurisdiction of the legislative body." Therefore, the City Attorney could not have

18   been acting under the direction of the Sacramento City Council such that the recall was city

19   business. Accordingly, in ordering or advising the Clerk to reject Plaintiffs' notices the City

20   Attorney acted well outside of her authority.

21   40.    Both the City Clerk's refusal to accept the filing of this recall petition and her more recent

22   statement that "the City Clerk will have no obligation to act upon a premature recall attempt"

23   constitute  interference with the rights of not only the recall proponents, but the rights of all the

24   voters in Sacramento, who are being denied the opportunity to sign this petition and qualify it for

25

26   the election. These rights are guaranteed by the US Constitution, the California Constitution, and

27

28

Plaintiffs' *Ex Parte* Application for Writ of Mandate and Declaratory Judgment

1    must be protected from the City Clerk and City Attorney, because these are some of our most

2    important rights.

3    41.    In the US Supreme Court's prior review of Ohio's elections law, *Williams v. Rhodes*, in 1968,

4    they also struck down ballot restrictions that made it virtually impossible for independent candidates

5    to qualify. 393 U. S. 23. The Court recognized the "interwoven strands of 'liberty' affected by

6    ballot access restrictions" and the "the right of qualified voters, regardless of their political

7    persuasion, to cast their votes effectively. Both of these rights, of course, rank among our **most**

8    **precious freedoms**." 393 U. S. 30-31 (Emphasis added). Here, "ballot access restrictions" must

9

10   include the right to initiate a process that if sufficient signatures are obtained, will place the recall of

11   an elected official on the ballot of the political division in question as well as provide an opportunity

12   for the voters to choose his or her replacement. Here, Defendant's actions have effective halted a

13   required step in that process, i.e., the filing of the signed Notices of Intent to Recall and thereby

14   abridged a right no less significant than the right to vote, itself.

15   42.    The 9th Circuit has held that "advocating for an initiative petition at the circulation stage is

16

17   certainly core political speech." *Chula Vista Citizens for Jobs & Fair Competition v. Norris*, 782

18   F.3d 520 (9th Cir. 2015). In that case, the court found that the state's requirement that electors be

19   human beings, rather than corporations, was reasonable.

20   43.    Similarly, here the Court is facing a ballot access restriction for recall petitions and those

21   who would seek to replace the targeted elected official based on a disputed interpretation of law.

22   Defendants' disingenuous, flawed and politically suspect reframing and disregard of the plain

23   language of the City's own charter. In short, Defendants interpretation of the law and its refusal to

24   accept Plaintiffs' signed Notices of Recall, unreasonably and unjustifiably interferes with their  First

25   Amendment rights under the Federal and State Constitutions, particularly, the protected "core

26   political speech" that is represented by the proponents of a recall of an elected official broadly

27   castigated for his disregard of the well-being of the community's most vulnerable members.

28

Plaintiffs' *Ex Parte* Application for Writ of Mandate and Declaratory Judgment

**Defendants' Obstruction of Plaintiffs' Right to Recall Has A Disproportionate Impact Minorities Who Represent a Significant Percentage of Sacramento's Homeless Who Have The Right to Hold Darrell Steinberg Accountable for Past Misconduct and the Risk of Future Harm**

44.     The disparate impact of homelessness on the African-American community is staggering. According to a 2020 report to Congress by the US Dept. of Housing and Urban Development, although African-Americans only make up 13% of the US population, they account for 40% of all people nationwide experiencing homelessness. Source: https://abcnews.go.com/US/50-homeless-families-black-government-report-finds/story?id=68433643. Overall, Sacramento County has the fifth highest number of homeless per capita of California's 54 counties, at 36 per 10,000 residents. Source:https://www.kcra.com/article/stanislaus-nevada-counties-move-to-red-tier-yolo-county-advances-to-orange/35914052. As of 2019, Sacramento had at least 5,570 people experiencing homelessness, and 70% of these individuals and families live outside completely unsheltered.

45.     Sacramento County reports that African-Americans are disproportionately represented among those experiencing homelessness, with 34% identifying as African-American, even though only 13% of Sacramento County is African-American. The vast majority of African-Americans experiencing homelessness reside in the City of Sacramento. Source: https://www.saccounty.net/COVID-19/Documents/2-23%20adult%20homelessness.pdf; https://sacramentostepsforward.org/wp-content/uploads/2019/06/2019-Final-PIT-Report-1.pdf

46.     Thus, in obstructing the recall of the Mayor, Defendants deny members of a protected class who are homeless or disproportionately at risk for becoming homeless their most fundamental right to vote and to recall elected officials, a section of the voting public that has reason to fear for its own future well-being should Darrell Steinberg remain in office.

## CONCLUSION

46.     For the reasons provided herein and those which may be advanced at an expedited hearing on this *Ex Parte* Application, Plaintiffs' respectfully request the Court to:

Plaintiffs' *Ex Parte* Application for Writ of Mandate and Declaratory Judgment

1. Issue an Order for Writ of Mandate instructing the City Clerk to accept the signed Notices of Intention to Recall and, assuming the absence of facial deficiencies thereupon, file, at once, the earlier rejected original signed Notice of Intention;

2. Issue a Declaratory Judgment that Darrell Steinberg was at the time of Plaintiffs' first attempt to file the Notices of Intent then subject to recall and remains so now, given that he had and has uninterruptedly and continuously held the same office for more than six months and, therefore Plaintiffs were not and are not now premature in their initiation of the recall process;

3. Issue an order instructing Defendants to adjust, as necessary, all deadlines pertaining to the recall process and otherwise expedite, without objection or delay, Plaintiffs' Recall campaign; that this Court retain jurisdiction over this matter and monitor compliance with this and any further orders and relief the Court deems necessary;

4. Set an Expedited Hearing on Plaintiffs' Application for the earliest possible date.

5. Award reasonable attorney's fees.

Dated: March, 24, 2021

Respectfully Submitted

Anthony D. Prince,
General Counsel,
California Homeless Union
Prince Law Offices,
Attorney for Plaintiffs

1  Anthony D. Prince (SBN # 202892)
   General Counsel, California Homeless Union/Statewide Organizing Council
2  Law Offices of Anthony D. Prince
   2425 Prince Street, Ste. 100
3  Berkeley, CA 94705
   Tel: 510-301-1472
4                                                                                    Pag
                                                                                     - 1 -
5  Attorneys for Plaintiffs

6                          UNITED STATES COURT

7                   EASTERN DISTRICT OF CALIFORNIA

8  SACRAMENTO HOMELESS UNION;              )  Case No.:
9  COMMITTEEE TO RECALL DARRELL            )  **DECLARATION OF ANTHONY D.**
   STEINBERG; SACRAMENTO                   )  **PRINCE IN SUPPORT OF PLAINTIFFS'**
10 SOLIDARITY OF UNHOUSED PERSONS          )  *EX PARTE* **APPLICATION FOR**
   ("SAC SOUP"[LIST NAMES OF               )  **EXPEDITED HEARING AND WRIT OF**
11 PROPONENTS]                             )  **MANDATE**
                                           )
12           Plaintiffs                    )
                                           )
13     vs.                                 )
                                           )
14 CITY OF SACRAMENTO, SACRAMENTO          )
   CITY CLERK MINDY CUPPY;                 )
15 SACRAMENTO CITY CLERK WENDY             )
   KLOCK; CITY OF SACRAMENTO CITY          )
16 ATTORNEY SUSANA ALCALA WOOD;
   MAYOR DARRELL STEINBERG, all sued
17 in their official and individual capacities,
   DOES 1 - 100,
18
             Defendants
19

20           **DECLARATION OF ANTHONY D. PRINCE**

21     I, Anthony Prince, am General Counsel for the California Homeless Union and attorney for

22 the Sacramento Homeless Union as well as the Committee to Recall Darrell Steinberg in the above-

23 captioned matter. The following is a true statement under penalty of perjury and based upon

24 personal knowledge or otherwise upon information and belief.

25
26     1.  On the night of January 24-25, 2021, a massive storm tore through the City of

27         Sacramento bringing torrential rains, near hurricane-force winds and causing widespread

28         destruction to thousands of homeless encampments, bitterly cold temperatures and as

   Declaration of Anthony D. Prince.

many as six deaths among the 1,000 unhoused population. The storm were forecast well in advance of its arrival but the City failed to open a single indoor shelter as it had previously announced it would. In one case, almost 100 homeless persons lined up a shelter only to find the door was locked. Following widespread community outrage, and a series of defensive comments, Defendant Steinberg finally and publicly admitted responsibility. (Attached hereto as Exhibit A is a series of newspaper stories and transcripts of television reports pertaining to the above-described series of events and the public reaction thereto.

2. In the midst of the community outrage, Plaintiff Sacramento Homeless Union and its President, Crystal Sanchez, established a Committee to Recall Darrell Steinberg which, in turn, drafted and began to circulate a Notice of Intention to Recall per local and state recall procedures and obtained the required number of Proponents' signatures. Attached hereto as Exhibit B is a true and correct copy of the Notices signed by thirty (30) registered Sacramento City voters.

3. Attached hereto as Exhibit B is a true and correct copy of the "Notice of Intention to Circulate Recall Petition" signed by thirty recall proponents and served via dropbox on Mayor Darrell Steinberg and City Attorney Susana Alcala Wood on February 19, 2021.

4. Attached hereto as Exhibit C is a true and correct copy of the pertinent portions relating to the recall of local elected officials from "Procedures for Recalling State and Local Officials," published by the Office of the California Secretary of State.

5. Attached hereto as Exhibit D are true and correct copies of the Proof of Service on Darrell Steinberg and related correspondence with the City Attorney.

6. On February 19, 2021, per the Procedures for Recall, a delegation from the Homeless Union, the Committee to Recall Darrell Steinberg and others who had signed the Notice as Proponents as well as local media came to City Hall to serve Mr. Steinberg and the

Declaration of Anthony D. Prince.

City Attorney with a copies of the signed Notices of Intent to Recall. However, the group was informed by lobby staff that all City Officials were working from home, that service could be accomplished by deposit in the City Hall lobby drop box from which the Notices would be hand-delivered that same day. Plaintiffs' counsel then considered taking the next step, i.e., filing the Notices containing the actual, original signatures of the Proponents with the City Clerk, but was hesitant to do so since it would be impossible to obtain a written, file-stamped notice of receipt from the Clerk as the Clerks were not physically present. Since per the City of Sacramento City Clerk's "Recall Petition Process Time Line" required the original notices to be filed "within seven days of serving [the] Office Holder" Plaintiffs immediately turned their attention to making arrangements to meeting her at City Hall where, per her email of February 24, 2021, agreeing to meet Plaintiffs' counsel at City Hall to facilitate in-person filing of the original Notice and provide him with written confirmation of the filing. Attached hereto as Exhibit E is a true and correct copy of an email from the Clerk confirming this arrangement.

7.  On February 24, 2021, at 7:32 pm, after receiving that same morning written confirmation of the following day's appointment at City Hall, Defendant Clerk Mindy Cuppy sent an email canceling the appointment and refusing to accept Plaintiffs' "filings" (quotations marks used in Clerk's email) with the justification that the recall effort was premature as "advised' by the City Attorney. (Attached hereto as Exhibit F is a true and correct copy of said cancellation.)

8.  Attached hereto as Exhibit G is a true and correct copy of an email dated February 24, 2020 replying to Defendant Cuppy and notifying her that Plaintiffs would take legal action should she continue to refuse to accept the Notices for filing.

Declaration of Anthony D. Prince.

Pag - 3 -

9. On February 25, 2021, Plaintiffs' counsel received a letter from Defendant City Attorney Susana Alcala Wood in which she suggested that I had "misread" the Clerk's email, that plaintiffs could now file the Notices with the clerk but that they would nevertheless be rejected based on what Plaintiffs believe is Attorney Wood's erroneous and politically motivated interpretation, respectively, of Sacramento City Charter Section 163 and California Election Code § 11007. At that point, given Defendant Wood's letter, the futility of filing said Notices became manifest. Accordingly, Plaintiffs had no choice but to seek judicial intervention.

10. Yesterday, March 23, 2021, it was widely reported that Governor Gavin Newsom had decided that Darrell Steinberg would not be his choice for State Attorney General. Attached hereto as Exhibit I is a true and correct copy of a news report confirming this report.

11. Although Plaintiffs had previously put the Clerk on notice of possible legal action, today, March 24, 2021 at approximately 2:00 pm, I contacted the City Attorney by phone and email and notified her that Plaintiffs would be filing the instant *Ex Parte* Application for a Writ of Mandate, Declaratory Judgment and an expedited hearing, a copy of which I attached to the email. In addition, I notified the City Attorney that I was available to meet and confer regarding the issues at any time convenient to her. Attached hereto as Exhibit J is a true and correct copy of the above-described email.

Dated: March 24, 2021

Executed at Berkeley, CA

Anthony D. Prince

Declaration of Anthony D. Prince.

Pag
- 4 -